## McEACHERN, ADMINISTRATOR, v. ROSE, FORMER COLLECTOR.

No. 6.  Argued October 14, 15, 1937.—Decided November 8, 1937.

*Mr. William A. Sutherland,* with whom *Mr. Joseph B. Brennan* was on the brief, for petitioner.

*Mr. Guy Patten,* with whom *Solicitor General Reed, Assistant Attorney General Morris* and *Messrs. Sewall Key, Harry Marselli* and *F. A. LeSourd* were on the brief, for respondent.

By leave of Court, a brief was filed by *Mr. Robert Ash,* as *amicus curiae,* supporting the petitioner.

MR. JUSTICE STONE delivered the opinion of the Court.

This petition for certiorari raises the question whether overpayments of income taxes for the calendar years 1929, 1930 and 1931 are so related to a tax on income which should have been but was not assessed against the taxpayer for the year 1928, as to preclude recovery of the overpayments although collection of the 1928 tax is barred by the statute of limitations.

In 1924 petitioner's decedent sold five hundred shares of the corporate stock of an insurance company for the sum of $300,000, at a net profit of $295,000 over 1918 cost. Ten per cent. of the purchase price was paid at the time of sale and the balance was to be paid in installments, aggregating annually 10% of the purchase price, in each of the nine succeeding years. As permitted by the applicable statutes (§ 202, Revenue Act of 1924, c. 234, 43 Stat. 255; §§ 202, 212, Revenue Act of 1926, c. 27, 44 Stat. 11, 23; § 44, Revenue Act of 1928, c. 852, 45 Stat. 805), decedent elected to return the profit for income taxation on the installment basis. After his death in 1928 petitioner, as his administrator, filed income tax returns in behalf of his estate for the calendar years 1928 to 1931 inclusive, showing in each year a sale of fifty shares of the stock of the insurance company at a net profit of $29,500. These returns were erroneous in point of fact and of law, as the petitioner sold no shares of the stock in any of those years, and since, by reason of the

provisions of § 44 (d) of the 1928 Act,[1] the capital gain included in the value of the unpaid installments at the time of decedent's death, was income taxable to decedent for the year 1928 and not in subsequent years.

By the provisions of § 44 (d), as construed by Treasury Regulations 74, Art. 355, the transmission of an installment obligation at the death of the payee capitalizes the unpaid installments of the contract and results in taxable gain to the estate of the decedent, measured by the difference between the fair market value of the obligation at the time of his death and its unrecovered cost. By § 113 of the 1928 Act the basis for computing the annual profit upon the installments paid after the decedent's death is the fair market value of the contract at the time of his death. The unpaid tax for 1928, computed as required by § 44 (d), exceeds the sum of the overpayments made in 1929, 1930 and 1931.

On the trial in the district court the collector contended that petitioner was estopped to deny that the sales of stock occurred and profit accrued as reported in his returns for the years in which refunds were claimed; and that, in any case, upon equitable principles, the petitioner was not entitled to recover the overpayments for those years, since they were less in amount than the tax which should have been assessed against him for 1928. See *Stone* v. *White*, 301 U. S. 532. The

---

[1] "Sec. 44. . . .

"(d) *Gain or loss upon disposition of installment obligations.*—If an installment obligation is . . . distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and . . . the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full."

trial court overruled these contentions and gave judgment for petitioner. The Court of Appeals for the Fifth Circuit reversed, holding that petitioner was not in equity and good conscience entitled to recover the overpayments which, because of his failure to pay the 1928 tax, had resulted in no unjust enrichment of the Government. 86 F. (2d) 231. We granted certiorari because of the importance of the question in administration of the revenue laws.

The collector does not press here the contention that petitioner is estopped to challenge the correctness of his returns for the years of overpayment. The failure of the Government to assess the appropriate tax in 1928 is not shown to be attributable to the erroneous statements made in the returns for the later years, and it is not necessary for petitioner to show understatement of the income taxable in 1928 in order to show the correct amount of the different income derived from the installment contract in the years of overpayment. For, under § 113, the overpayments are established by showing that in each year the amount of income from the sale of the stock as reported exceeded the difference between the installments collected and so much of the value of the installment contract at the death as is allocable to the taxable year. But respondent insists, as the court below held, that petitioner is not equitably entitled to recover overpayments of taxes upon the profits derived from the contract in certain years because the overpayments are exceeded by a tax which he should have paid on the profits realized in an earlier year.

We may assume that, in the circumstances, equitable principles would preclude recovery in the absence of any statutory provision requiring a different result. But Congress has set limits to the extent to which courts might otherwise go in curtailing a recovery of overpay-

ments of taxes because of the taxpayer's failure to pay other taxes which might have been but were not assessed against him. Section 607 of the 1928 Act declares that any payment of a tax after expiration of the period of limitation shall be considered an overpayment and directs that it be "credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim"; and § 609 (a) of the 1928 Act provides that "Any credit against a liability in respect of any taxable year shall be void if any payment in respect of such liability would be considered an overpayment under section 607." These provisions preclude the Government from taking any benefit from the taxpayer's overpayment by crediting it against an unpaid tax whose collection has been barred by limitation.

It is plain that these provisions forbid credit of the overpayments of taxes for 1930 and 1931, which were made after collection of the 1928 tax was barred. If petitioner had then paid the 1928 tax there would have been an overpayment of the tax, refund of which is made mandatory by § 607. Credits against the tax of overpayments of taxes assessed for other years, if made at that time, could not stand on any different footing under the provisions of § 609. The right of the Government to credit the overpayments upon the earlier unpaid tax could arise only when the overpayments occurred; but since at that time collection of the 1928 tax was barred by limitation, and payment of it would be an overpayment, credit against it of the 1930 and 1931 overpayments was forbidden by § 609.

Different considerations apply to the 1929 overpayment. When it was made, collection of the 1928 tax was not barred and the commissioner was not then prevented by § 609 from crediting the overpayment upon the 1928 tax, although he did not do so. Section 322 of the 1928

Act,[2] continued without material change in the 1932 Act, authorizes the credit of an overpayment of any tax against any income tax "then due" from the taxpayer, and directs that any "balance shall be refunded immediately to the taxpayer." We need not inquire whether the 1928 deficiency was "due" within the meaning of this section before the tax was assessed, for in any case there could be no credit against the tax of the 1929 overpayment, before the amount of the latter was ascertained and allowed and at that time collection of the 1928 tax was barred and any credit of the overpayment against it was declared to be void by § 609.

Both § 322 and § 609 contemplate that the time of credit of an overpayment in one year against a tax for another is to be marked by some definite administrative action. This Court, upon an examination of the established practice in the Bureau of Internal Revenue, concluded that the time of allowance of a refund and the time of credit of an overpayment against a tax due, is the date of approval by the commissioner of the schedule of refunds and credits prepared by the collector, showing the amount due the taxpayer, rather than the earlier date of the certification by the commissioner to the collector, of the schedule of overassessments. See *United States* v. *Swift & Co.,* 282 U. S. 468; *Girard Trust Co.* v. *United States,* 270 U. S. 163. We accordingly held that approval of the schedule of refunds and credits fixes the date from which interest is allowed upon any balance refunded to the taxpayer, *Girard Trust Co.* v. *United States, supra,* and the date from which the statute of lim-

---

[2] Sec. 322.

"(a) Authorization.—Where there has been an overpayment of any tax imposed by this title, the amount of such overpayment shall be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance shall be refunded immediately to the taxpayer. . . ."

itations runs against the taxpayer's right to demand refund of a tax paid by the allowance of a credit. *United States* v. *Swift & Co., supra.*

After these decisions § 1104 of the Revenue Act of 1932, c. 209, 47 Stat. 287, changed the date which should be deemed to be the time of allowance of the credit or refund within the meaning of that and earlier revenue laws. It provided that "Where the Commissioner has (before or after the enactment of this Act) signed a schedule of overassessments in respect of any internal revenue tax imposed by this Act or any prior revenue Act, the date on which he first signed such schedule (if after May 28, 1928) shall be considered as the date of allowance of refund or credit in respect of such tax."

The date of the claim for refund and the date of the allowance of the credit which, according to § 1104, was that of the approval by the commissioner of the schedule of overassessments, came after recovery of the 1928 tax was barred. If petitioner had then paid the tax he could have recovered it back as an overpayment under § 607; accordingly, credit against the tax of the 1929 overpayment is prohibited by § 609, as are like credits for the overpayments of 1930 and 1931.

The similar treatment accorded by the statutes to credit against an overdue tax, and to payment of it; the prohibition of credit of an overpayment of one year against a barred deficiency for another; and the requirement that payment of a barred deficiency shall be refunded, are controlling evidences of the Congressional purpose by the enactment of §§ 607 and 609 to require refund to the taxpayer of an overpayment, even though he has failed to pay taxes for other periods, whenever their collection is barred by limitation.

Sections 607 and 609 do not apply in the circumstances disclosed in *Stone* v. *White, supra.* There testamentary trustees had paid from income a tax upon it which should have been paid by the beneficiary, and it was held that

they were not equitably entitled to recover the tax after the statute had barred collection from the beneficiary. The assessment of a deficiency against the trustees and the payment of it by them were not barred by limitation. Hence § 607 did not compel a recovery. Section 609 did not require it. The commissioner neither sought, nor did § 322, regardless of any period of limitation, permit him to credit the amount which the one taxpayer had paid against the tax which another should have paid. Equitable considerations not within the reach of the statutes denied a recovery. It was enough, in the peculiar facts of the case, that the trustees had suffered no burden and that the Government was not unjustly enriched.

*Reversed.*