ARCHIE R. CONNER, ADMINISTRATOR OF THE ESTATE OF LUCY RADU-
LOVICH, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 88064.   Promulgated May 17, 1938.

*J. W. Townsend, Esq.*, for the petitioner.
*E. C. Adams, Esq.*, for the respondent.

OPINION.

ARNOLD: The constitutionality of section 44 (d) of the Revenue Act of 1934,[1] or of similar sections in prior revenue acts, has been

---

[1] SEC. 44 (d). GAIN OR LOSS UPON DISPOSITION OF INSTALLMENT OBLIGATIONS.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received. The basis of the obligation shall

considered and decided adversely to petitioner's contentions in *Rose* v. *McEachern*, 86 Fed. (2d) 231; reversed on another point, *McEachern* v. *Rose*, 302 U. S. 56; *Lawler* v. *Commissioner* (C. C. A., 9th Cir.), 78 Fed. (2d) 567, affirming 29 B. T. A. 227; *Crane* v. *Helvering* (C. C. A., 2d Cir.), 76 Fed. (2d) 99, affirming 30 B. T. A. 29; *Nuckolls* v. *United States* (C. C. A., 10th Cir.), 76 Fed. (2d) 357; and *Provident Trust Co. of Philadelphia* v. *Commissioner* (C. C. A., 3d Cir.), 76 Fed. (2d) 810, affirming 29 B. T. A. 374. See also *Moore* v. *United States* (Ct. Cls.), 10 Fed. Supp. 143; certiorari denied, 296 U. S. 583; and *F. E. Waddell et al., Executors,* 37 B. T. A. 565. In view of these authorities we deem it unnecessary to discuss the constitutionality of said section.

The remaining issue is a question of law involving the application of the last sentence in section 44 (d). The respondent, applying the first portion of 44 (d), increased decedent's income by $13,915.26 because of the gain realized upon the transmission of installment obligations at decedent's death. The petitioner does not contest the amount of gain, but claims that it is entitled to the benefits conferred by the last sentence of said section. If the provisions of the last sentence govern, there will be no gain returnable from the transmission of the obligations at death, but if such provisions do not govern, respondent's action must be approved. Since the issue involves a question of statutory construction, a short history of the enactment of the provisions and the reasons therefor will be helpful.

Prior to the enactment of section 212 (d) of the Revenue Act of 1926 there was no statutory authorization for reporting profits on the installment basis. *Willcutts* v. *Gradwohl*, 58 Fed. (2d) 587; certiorari denied, 287 U. S. 637. The enactment of that provision was a definite recognition by Congress of the hardships suffered by taxpayers selling property upon the installment basis. Section 212 (d) gave relief by permitting the taxpayers to postpone the taxing of profits until the installment payments were received. Many taxpayers, after electing to report gain under section 212 (d), successfully escaped any further tax by disposing of their installment obligations in nontaxable transactions. *Harold G. Ferguson,* 34 B. T. A. 522, 525. To plug this loophole Congress added subdivision (d) to section 44 of the Revenue Act of 1928, which attached a condition to the option granted taxpayers to the effect that if the taxpayer dis-

be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. This subsection shall not apply to the transmission at death of installment obligations if there is filed with the Commissioner, at such time as he may by regulation prescribe, a bond in such amount and with such sureties as he may deem necessary, conditioned upon the return as income, by the person receiving any payment on such obligations, of the same proportion of such payment as would be returnable as income by the decedent if he had lived and had received such payment.

posed of or transmitted his installment obligations, the balance of the profit was realized. *Nuckolls* v. *United States, supra.*

The application of 44 (d) of the 1928 Act imposed a hardship upon the estates of decedents who died possessing a substantial amount of installment obligations. Congress attempted to alleviate this hardship by adding the last sentence in section 44 (d) of the 1932 and 1934 Acts, the provisions of which permit the decedent's estate to postpone returning the gain under certain conditions. The procedure provided for was designed to relieve the hardship and at the same time protect the revenue, Report of the Finance Committee of the Senate, Revenue Bill of 1932.[2]

The respondent's interpretation of section 44 (d) of the 1934 Act is revealed by article 44–5 of Regulations 86, the pertinent portion of which is set out in the margin.[3]

A careful analysis of the facts indicates that the requirements of the statute and the regulations for postponing the recognition of gain have been substantially complied with. The typed bond is precisely worded with respondent's printed form 1132; the bond was filed with decedent's return; the amount of the bond is more than double the deficiency now asserted; the bond was executed by the residuary legatees and a surety company; the bond is conditioned upon the return as income by the legatees of the unreported gain in each payment; and the surety company is apparently an acceptable surety on Federal bonds. Respondent's approval of the bond is the only thing lacking and that is a requirement of the regulations, not of the statute.

[2] Your committee has added to section 44 (d) a provision that the subsection shall not apply to the transmission at death of installment obligations if a bond is filed in the proper amount conditioned upon the return as income by any person receiving any payment on account of such obligations of the same proportion of such payment as would have been returnable by the decedent had he lived and received the same. It has come to the attention of your committee that considerable hardship sometimes occurs in the application of existing law to cases of decedents who die possessed of substantial amounts of installment obligations. In such cases the entire amount of the profit represented by the obligations must be reported as income in the return of the decedent for the year of his death. Your committee believes that if, for example, the estate of the decedent or his next of kin or legatees file a bond to return as income the proper proportion of the payments received by them on account of the installment obligations received from the decedent, the revenue will be properly protected. This section is accordingly amended to provide for such procedure.

[3] * * * In the case of decedents who die possessed of installment obligations, no gain on account of the transmission at death of such obligations is required to be reported as income in the return of the decedent for the year of his death, if the executor or administrator of the estate of the decedent or any of the next of kin or legatees file with the Commissioner a bond on Form 1132 in an amount not less than the amount by which the tax of the decedent for the year of his death would have been increased had no such bond been filed. The bond shall be conditioned upon the return as income, by any person receiving any payment in satisfaction of such obligations, of the same proportion of such payment as would be returnable as income by the decedent if he had lived and had received such payment. The bond shall be executed by a surety company holding a certificate of authority from the Secretary of the Treasury as an acceptable surety on Federal bonds, shall be subject to the approval of the Commissioner, and must be filed at the time of filing the return of the decedent for the year of his death. * * *

The issuance of the deficiency notice was clearly a rejection of the bond, and raises the interesting question of whether failure to approve the bond constituted an abuse of discretion. The petitioner contends that respondent has no discretion under 44 (d) but must accept the bond because of the *absolute right* granted taxpayers by the statute, citing *F. Harold Johnston, Executor*, 33 B. T. A. 551. In that case the executor filed decedent's return without reporting any gain from the acceleration of installment profits. Thereafter form 1132 became available and the executor offered to file a bond as permitted by section 44 (d) of the 1932 Act. In the interim the legatees had returned the profits for the year in which the installment payments were received. The respondent refused to accept the bond because it had not been filed with the decedent's return. We held that the respondent's refusal was arbitrary and that the bond should have been accepted.

By comparison the facts in this proceeding are stronger in that a bond was actually filed, but was not approved, not because of a defect in the bond or the parties executing it, but because of the taxable status of the residuary legatees. The real reason for not approving the bond is that as the legatees are tax exempt corporations the profit of the uncollected obligations may escape tax. Respondent argues that as a charitable organization is not required to file an income tax return, or pay a tax, it is not a "person", as used in the last sentence of section 44 (d), that could file a bond "conditioned upon the return as income." That would read into the last sentence of section 44 (d) something that is not there and limit the word "person" to "taxable person." Such an interpretation is not in harmony with the statutory definition of the word "person" found in section 801 (a) (1), which provides that "When used in this Act—(1) The term 'person' means an individual, a trust or estate, a partnership, or a corporation." In our opinion the term "person", as used in the last sentence of section 44 (d), includes any corporation, and respondent can not base his nonapproval of the bond upon the taxable status of these legatees.

The issue, therefore, narrows down to whether respondent can look beyond the provisions of 44 (d) to the parties binding themselves to return the gain and ascertain whether such parties will pay a tax thereon. The last sentence in section 44 (d) indicates the Congressional intent to prohibit the acceleration of gain where installment obligations are transmitted at death. Not only is a privilege granted, but the grant is secured by a mandatory prohibition against the application of 44 (d) if a bond is filed conditioned upon the "return as income" (not the payment of tax) of that proportion of the payment which decedent would have returned as income had she lived and received payment. Such a bond, so conditioned, was filed. The re-

spondent had no right to refuse a proper bond, and his refusal to approve it was arbitrary. Such an abuse of discretion can not be justified by anticipating a possible defense of the residuary legatees.

Whether the legatees can escape a tax on the income returned is not a matter which we have to determine. We have to construe the statute as written, and if the construction gives rise to administrative difficulties, respondent's recourse is with Congress. But where the statutory requirements have been fully met, and the privilege granted has been earned, the respondent can not arbitrarily deny the privilege because future contingencies may deprive him of the tax.

The deficiency should be recomputed in accordance herewith.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

MELLOTT, dissenting: The holding that the respondent acted arbitrarily in refusing to approve the proffered bond seems to me to be erroneous. The bond was not filed with the Commissioner but was merely tendered for approval and filing. The taxpayer's remedy, if injured or aggrieved by his refusal to approve it, was recourse to a court of general jurisdiction. A court, by writ of mandamus, might have compelled him to act; but even a court would not attempt to control his judgment or discretion unless he acted arbitrarily, and a conclusion that he has so acted would be reached only when clearly justified by the evidence.

Even assuming that this Board has jurisdiction to determine whether the Commissioner did, or did not, act arbitrarily, which is doubtful, the evidence is wholly insufficient to justify the conclusion reached by the majority. He sought and secured the written advice of the General Counsel of the Treasury Department, which was introduced in evidence before us. The General Counsel recommended disapproval of the bond because it would be of no value to the Government since the mere *return of income* by a charitable organization would not result in the collection of the tax due, but would have the effect of granting an exemption from tax and thus defeat the very purpose of section 44 (d).

As pointed out by the Court of Claims in *Moore v. United States*, 10 Fed. Supp. 143; certiorari denied, 296 U. S. 583, "The statute places property received as a profit by the decedent during his lifetime and transmitted by his death in the same class as the distribution, sale, or other disposition of such property during the taxpayer's lifetime." The obvious purpose of Congress in adding the amendment in 1932 which permits the estate of a decedent, his next of kin, or legatees to file a bond, is to protect the revenue and is not to grant an exemption.

The executors filed two income tax returns approximately a year after the death of the decedent, one for the period prior to her death and one for the period subsequent to her death. In neither did they report any portion of the profit in question. An amended return for the period subsequent to the death of the decedent was filed on February 19, 1936, in which it is stated that it is the contention of the executor that all income, since it inures to the benefit of beneficiaries which are corporations exempt from tax, is exempt from taxation even before distribution to the beneficiaries. Perhaps the question whether the income may thus be exempted from tax is not properly before us and need not be determined; but in view of the questions which may arise, the possible ambiguity of section 44 (d), the duty of the Commissioner to protect the revenue, and the fact that advice of counsel was secured and followed, I think it should not be held that he acted arbitrarily in withholding his approval of the proffered bond.

HARRON agrees with this dissent.