## NEPTUNE METER CO. v. PRICE, Collector.

### No. 317.

Circuit Court of Appeals, Second Circuit.

June 20, 1938.

Regan & Barrett and Charles R. Barrett, all of New York City (S. Stanwood Menken, of New York City, of counsel), for appellant.

James W. Morris, Asst. Atty. Gen., Sewall Key and Clarence E. Dawson, Sp. Assts. to Atty. Gen., Harold St. L. O'-Dougherty, U. S. Atty., and Clarence Wilson, Asst. U. S. Atty., both of Brooklyn, N. Y., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment for the defendant entered after a trial to a judge by stipulation. The action was to recover income taxes erroneously collected, and the issue is as to a deduction for loss in the year 1926, which the plaintiff originally failed to take, but which it later set up in a claim for refund, filed in season but disallowed on the merits by the Commissioner. This loss arose through the purchase by the plaintiff of all the shares of stock of the Thomson Company in June,

1925; the price paid was $2,025,100, and upon liquidation of the company eight months later the amount realized, as the plaintiff asserts and the defendant denies, was $1,348,159.01. The chief dispute between the parties concerns a dividend of $500,000, declared after the plaintiff had bought the shares, which the defendant says was in liquidation, and therefore to be taken in redemption of the purchase price, but which the plaintiff insists was ordinary income for the year 1925 in which it was declared, except as to $142,500 which had been accumulated before March 1, 1913. A subsidiary issue, which arises in case the plaintiff is right about this dividend, is whether two other items should be taken out of it and added to capital amount: $39,000, carried on the books as a reserve for bad debts, and about $90,000, for patent depreciation. The judge found that the dividend was to be charged altogether in redemption of the purchase price, and that the value of the assets upon liquidation was equal to the purchase price after the dividend had been deducted. No loss having been proved, he dismissed the complaint.

The plaintiff bought the shares on June 13th, 1925, at a time when it had no thought of dissolving the Thomson Company, which, though its business was of the same general kind, made a different water meter with a separate history and reputation. Early in December of that year, however, the Federal Trade Commission wrote a letter to the plaintiff suggesting that such a union of the two companies was obnoxious to the Anti-Trust Acts, 15 U.S.C.A. § 1 et seq., and on December 10th the plaintiff's counsel advised its board of directors that the only prudent course was to dissolve the Thomson Company and take over its assets. The directors acted upon this advice by filing a formal dissolution of the company and taking over the assets in February, 1926. The declaration of the dividend in question came about in this way. The Thomson Company on June 13th, 1925, had already accumulated a surplus of over $500,000, which the plaintiff wished to get hold of; its practice had for some time been to cover into its own treasury the surpluses of its subsidiaries—of which the Thomson Company was not the only one—and this particular surplus was especially welcome, because the plaintiff was then engaged in floating a new issue of stock, whose sale the possession of a large liquid capital would help. The dividend was declared on October 25, 1925, and the question is whether—except for the $142,500—it was a distribution in liquidation, or ordinary income. Section 201(b) of the Revenue Act of 1924, 43 Stat. 254, required all distributions to be debited against the most recent earnings, except when made "in complete" or "in partial liquidation", in which case § 201(c) made them redemptions pro tanto of the original purchase price. The dividend of October, 1925, if it was in liquidation at all was only "in partial liquidation"; that is, "one of a series of distributions in complete * * * redemption of all * * * its stock"; § 201(g). In a case like this we can see no other test than one of intent; were the plaintiff's directors already in course of winding up the Thomson Company on October 24, 1925, and was this dividend meant as a part of the process? There cannot be the least doubt that it was not; the shares had been bought to continue the business in corporate form; the company was to make the same meters as before; there was no thought of liquidation until six or seven weeks after the dividend had been declared, and then only for a reason which had just come into existence. Besides, it was declared for positive reasons which had nothing to do with liquidation; it was as much in the ordinary course of business as any other dividend, and, while it is true that it was much greater than any earlier one, the increase is explicable by the desire to put all possible liquid capital in the plaintiff's hands. In Helvering v. Security Savings & Commercial Bank, 4 Cir., 72 F.2d 874, the dissolution was in contemplation at the amount of the purchase, and the dividend was plainly a part of the winding up. The defendant also argues, as we understand it, that the cash is to be treated as bought separately from the other assets, and that the purchase price must therefore be divided and allocated in part to surplus and in part to plant; but there is not a shred of evidence to support such an interpretation of the bargain. It would no doubt be possible to treat it so, if the corporate form were disregarded; but that was not the transaction; the plaintiff bought shares, not cash and plant. The income tax law normally recognizes corporations as taxpayers, and transactions in their shares as different from transactions in their property, and this was not one of the exceptions. Hence we hold that to the extent of $357,500 the

dividend was not to be deducted from the purchase price, or added to the liquidating values.

As we have already said, the defendant insists this sum includes two items which are properly chargeable to capital account —a reserve for bad debts, and another for patent depreciation, both carried as such on the Thomson Company's books. Such entries in no sense impound cash or put it beyond the taxpayer's control; they are mere bookkeeping devices for his convenience and may be reversed whenever he pleases; they are ordinarily irrelevant to his taxes, unlike the issue of shares against surplus which impounds it pro tanto. As to the reserve for bad debts it is true that by § 234(a) (5) of the Revenue Acts of 1921 and 1924, 42 Stat. 255 and 43 Stat. 284, a taxpayer with the Commissioner's assent may set up a reserve and treat it as the equivalent of actual debts charged off as worthless. We need not consider how far such an election would conclude one who had availed himself of it; the Thomson Company never did so; it deducted such debts as became in fact worthless and no more. Hence the entry was irrelevant to a determination of the amount of earnings comprised within the dividend here in question. The issue over the reserve for patent depreciation arose as follows. From March 1, 1913 to January 1, 1920, the Thomson Company kept on its books such a reserve, and in its yearly returns deducted the increments as they were added. These deductions were allowed until 1920, after which they were disapproved, though the Commissioner took no proceedings to reassess the tax for the earlier years, and would have been barred before 1927, when the money was paid of which the plaintiff now seeks a refund. As a mere entry this item could be reversed like the reserve for bad debts, but the defendant insists that the plaintiff is estopped to do so because of the prior exemptions secured by the Thomson Company. It is true that we are dealing with a refund, a claim to recover taxes paid, not with a liability sought to be enforced; and that, although a taxpayer may demand that the Commissioner point to the very text that imposes any liability upon him, after he has once paid and when he seeks a refund, he must show that he is equitably entitled to the money in the light of all relevant circumstances. Furthermore, the plaintiff asks us to treat as surplus that part of the earnings which the Thomson Company succeeded in withdrawing from taxation on the ground that they were necessary to restore the capital; yet obviously the same sum cannot at once be a recoupment of a capital loss and part of the surplus. We may therefore assume arguendo, that if the Thomson Company were seeking a refund, equity, if free to act, would set-off any taxes it had saved in the past: the company, seeking to unravel its own mistake, would be compelled to concede the same privilege to the Treasury. But it seems to us that such a course would be shut off by McEachern v. Rose, 302 U. S. 56, 58 S.Ct. 84, 82 L.Ed. 46, which held that § 609(a) of the Act of 1928, 26 U.S.C. A. § 1675(a), prevented the Treasury from setting-off, as a credit against a claim for refund, any claims outlawed at the time when the taxpayer paid the money he was reclaiming. The implication was—and the court had so decided just before, Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265—that except for this section both claim and counter-claim should be brought into equitable hotch-pot; but § 609(a), read with § 607, 26 U.S.C.A. 1670(a) (2), was held to put a quietus upon outlawed claims as well for defensive as for offensive purposes. Thus the defendant would fail as to this item if the Thomson Company were suing, and his position against the plaintiff is certainly no stronger. The foregoing has not, however, really answered the defendant's argument, which is that the plaintiff is estopped, not that it must set-off any sums saved by the Thomson Company in earlier years. As to such an estoppel we may again borrow from the reasoning in McEachern v. Rose, supra, 302 U.S. 56, 59, 58 S.Ct. 84, 85. It is not necessary for the plaintiff to prove the underpayments between 1913 and 1919 as part of its right to cancel the reserve. The underpayments were accidents, attributable it is true to the existence of the reserve, but no part of the sequence necessary to the desired conclusion. Indeed, were inconsistency in law between the taxpayer's positions alone enough, McEachern v. Rose, supra, could not have been decided as it was, and § 609(a) would probably have a much restricted scope. The plaintiff cites Holmquist v. Blair, 8 Cir., 35 F.2d 10, but we cannot see that it has any bearing upon the situation; it merely decided that the Commissioner was not bound to use a method of calculating shareholder's tax which he had used in calculating the cor-

poration's. We hold that neither of the two items was allocable to capital.

Finally, there is the question of the proper valuation of the assets taken over by the plaintiff in February, 1926. The judge appraised these at the same amount as the purchase-price after the dividend was deducted, $1,525,100; they were in three parts; (1) current assets, $478,900; (2) land, equipment, etc. $505,500; (3) good will and intangibles, $540,700. Of these the first is not in dispute; and such dispute as there is about the second concerns the difference between values at which the property was carried on the books of the Thomson Company, or sold by the plaintiff, and an appraisal in December, 1925, which the judge accepted. It is true that both the book value and the sale price were for very much less than the appraisal, but the plaintiff itself in April, 1929, had urged upon the Commissioner that the appraisal was correct and had sought to secure his action upon that assumption. There was therefore enough to support the judge's finding, and we should not have disturbed it if the judgment had been right in other respects. As to the valuation of the good will and intangibles the judge merely found that they were equal to the difference between the reduced purchase price and the sum of the first and second items. We are not satisfied that he meant more by this than to hold that the value of this item was at least equal to that difference; and in any case we shall leave both it and the second item to be reappraised at the new trial which must in any case be had.

Judgment reversed and new trial ordered.