### SILVERTHAU v. UNITED STATES.

#### No. 3857.

District Court, D. Connecticut.

Sept. 2, 1938.

---

[1] The Howell, D.C.1919, 257 F. 578.

Bronson, Rice & Lyman (by Cleaveland J. Rice and Charles M. Lyman), all of New Haven, Conn., for plaintiff.

James E. Murphy, Sp. Asst. to the Atty. Gen., and Louis Y. Gaberman, Asst. U. S. Atty., of Hartford, Conn., for the United States.

HINCKS, District Judge.

### Findings of Fact.

1. The plaintiff, Caroline Silverthau, is and at all times material hereto has been a resident of the State of Connecticut.

2. On May 18, 1926, the plaintiff created a trust which is in the following terms and language:

"Deed of Trust

"I, Caroline Silverthau, of the City and County of New Haven, State of Connecticut, hereby set over, assign and transfer to The New Haven Bank N.B.A., of said New Haven, the securities named in the schedule hereto annexed, In Trust, however, for the following uses and purposes: to hold the same and such other securities as may from time to time be added to said Trust Fund, if any, with power to sell any of said securities and to reinvest the proceeds of sale at the discretion of said Trustee in such securities as it may deem for the best interest of said trust funds, whether or not they are legal investments for trust funds, and after deducting the charges and expenses of the trust, to pay over the net income quarterly on the last days of June, September, December and March, beginning June 20th, 1926, to me or upon my order during my lifetime, and upon my death to pay over said Trust Fund to my executor or administrator.

"I further empower said Trustee to cause any or all of the securities in said Trust Fund to be transferred into its own corporate name, and to transfer the same without disclosing the Trust.

"In Witness Whereof, I have hereunto set my hand and seal at New Haven, Connecticut, this 18th day of May, A.D. 1926.

"Signed, sealed and delivered in the presence of                Caroline Silverthau

"Grace E. Fisher

"Geo. W. Kusterer"

The New Haven Bank N. B. A., a Connecticut corporation, accepted said trust and at all times hereinafter mentioned has acted as trustee under said trust indenture.

3. In 1933, the trust estate sold or exchanged securities from the corpus of the trust which had been held by the trust estate for more than two years prior to such sale or exchange. The trust estate sustained a loss of $29,227.15 from this sale or exchange. The trust had no capital gains or capital deductions as defined in Section 101 of the Revenue Act of 1932, 26 U.S.C.A. § 101 note.

4. On March 14, 1934, this plaintiff filed her individual income tax return for the calendar year 1933, reporting therein a gross income of $38,901.34, and a taxable income of $36,850.51. In computing her tax on this $36,850.51, she used as a capital net loss adjustment the $29,227.15 loss sustained by the trust in 1933, with the result that she reported no tax due on her 1933 income tax return.

5. The Commissioner of Internal Revenue disallowed the plaintiff's treatment of the $29,227.15 loss sustained by the trust as an adjustment in computing her own tax. This disallowance resulted in a deficiency of $2,348.73 which was assessed and paid on September 7, 1935, together with interest of $100.02, making a total of $2,548.75, paid on September 7,

1935. The plaintiff filed a claim for refund on September 14, 1935, which was rejected on January 7, 1936. This action is brought to recover the taxes and interest paid as aforesaid.

6. In 1929, the trust estate realized a gain of $13,502.97 on the sale or exchange of some of the securities which comprised the trust corpus. This gain, however, was not paid or distributed to the plaintiff in that year. The trust filed its individual income tax return for 1929 on March 15, 1930. The $13,502.97 gain from the aforesaid sale or exchange constituted the entire income of the trust for 1929. The total income tax paid by the trust in respect of this income for 1929 was $151.55.

7. On March 15, 1930, the plaintiff filed her individual income tax return for the calendar year 1929, reporting a net income of $58,879.82 and a tax of $4,574.-20 which was paid. She included in this return $17,961.64 as the trust income which was distributed to her in that year under the terms of the trust, but did not then nor has she at any time before or since included or reported as income to her any part of the $13,502.97 realized by the trust on the aforesaid sale or exchange of securities from the trust corpus, and she has never at any time paid any tax on this $13,502.97.

8. If the plaintiff had included the aforesaid $13,502.97 in her income for income tax purposes in 1929, her tax would have been $2,653.43 greater than the amount she actually paid for 1929 and $2,501.88 greater than the tax actually paid by both the plaintiff and the trust estate for 1929.

9. The income tax returns of the plaintiff and of the trust under which she is beneficiary for the calendar years 1926 to 1933, inclusive, were prepared by the trust officers of the New Haven Bank, N.B.A.

10. In making said returns said trust officers did not consider the question of whether or not the trust in question was revocable until 1933, when the return for the calendar year 1932 was under consideration.

11. Prior to 1933 said trust officers had not had the advice of an attorney with respect to the construction of the trust instrument.

12. Prior to 1933 said trust officers had made all of the income tax returns in their charge upon the theory that all of the trusts were irrevocable, and had drawn no distinction between the types of trust.

13. Upon being advised early in 1933 of the distinction between the types of trust, and of the importance of construing the trust instrument, said trust officers sought advice as to the character of the trust here in question, and upon being advised that it was a revocable trust, made all returns thereafter on the basis of such construction, commencing with the first of such returns for the calendar year 1932.

14. At all times since the creation of said trust in 1926, the agents of the Internal Revenue Department have had all material facts in their possession.

15. At no time since the creation of said trust has plaintiff, acting individually or through her agents, withheld any material fact from said agents of the Internal Revenue Department.

16. An agent of said Internal Revenue Department discussed with said trust officers the revocability of said trust prior to the outlawing of increases in assessment for the calendar year 1929. (See Page 12 of the transcript of evidence).

17. At all times since the creation of said trust in 1926 the books and records of said New Haven Bank, N. B. A. have been open for examination by the agents of the Internal Revenue Department who have checked said books and records annually.

18. If the tax returns for the calendar year 1932 had been made upon the theory that the trust was revocable, the combined income tax of plaintiff and the trust for the calendar year 1932 would have been smaller by $2,503.62 than the amount actually paid.

19. The assessment and collection of additional taxes from this plaintiff for the calendar year 1929 is now barred by the statute of limitations and was so barred when this plaintiff filed her individual income tax return for the calendar year 1933.

### Conclusions of Law.

#### I.

The trust created under the indenture set forth in Paragraph 2 of the findings was revocable within the meaning of Section 166 of the Revenue Act of 1932, 26 U.S.C.A. § 166, and Treasury Regulations 77, Art. 881.

## Comment.

The settlor's direction "upon my death to pay over said Trust Fund to my executor or administrator" created no estate by way of remainder. It created no duty on the part of the trustee in the case of settlor's death testate to ascertain and pay over to her legatees, or in case of her death intestate to ascertain and pay over to those entitled under the Statute of Distribution (Gen.St.Conn.1930, § 4982). The phrase imports an intent not to create an estate in the remainder but to provide a simple and practicable means for the termination of the trust and the discharge of the trustee in order that the corpus might pass under settlor's will or under the Statute of Distribution without obstruction by the trustee.

Since the indenture created no estate in remainder, the settlor remained at all times the owner of every equitable interest in the corpus.

The foregoing conclusion is required by the case of Hoskin v. Long Island Loan & Trust Co., 203 N.Y. 588, 96 N.E. 1116, affirming the judgment "on opinion of Bur, J., below." For the opinion below see 139 App.Div. 258, 123 N.Y.S. 994.

There is nothing in the holding of Corbett v. Bank of New York & Trust Co., 229 App.Div. 570, 242 N.Y.S. 638, inconsistent with my conclusion. There the court assumed "without conceding, that under the trust before us the next of kin of the plaintiff and his wife would take as purchasers." It did not hold that the next of kin had in fact or in law acquired any estate in the trust corpus under the deed of trust.

The case of Whittemore v. Equitable Trust Co., 250 N.Y. 298, 165 N.E. 454, fails to support the defendant's contention. There the settlor created a life estate in another, and provided that upon the death of the life tenant the net principal should be paid (presumably by the trustee) to such persons as the settlor should name by will or in default of such appointment to such persons as would have taken "if such deceased settlor had been the owner thereof at the time of his * * * death and had died intestate." [page 455.] And it was held that the trust deed created in the next of kin "a vested remainder, which might be divested by the last will and testament of the settlor." But this was so because the intent was manifest "to give a remainder" to the next of kin

subject to change by will. "The creator of the trust reserves power of disposition only by will; he does something more than merely set up a trust for a life beneficiary; he disposes of the property at the termination of the life interests in case of his previous death."

The case at bar is distinguishable from the Whittemore Case in that here the life use is expressly reserved to the settlor and the direction upon the settlor's death to pay over to her executor or administrator contains no indication of an intent to dispose of the beneficial interest in the remainder. As the court in the Whittemore Case observed: "If the trust deed had said that, upon the death of the life beneficiary, the net principal of trust estate was to be paid over and delivered to the settlor or his next of kin in equal shares, the addition in this place of the words 'next of kin' would not have been sufficient in all probability to create a remainder. Rather it would indicate that the settlor intended all above a life interest to remain with him as a reversion, to be disposed of in any way he pleased." Equally, the payment here directed to settlor's "executor or administrator" indicates an intent to reserve complete power of disposition rather than a present intent to dispose of the beneficial interest in the corpus. And neither impliedly nor expressly does the Whittemore Case overrule the earlier Hoskin Case.

The case of Hammond v. Chemung Canal Trust Co., 141 Misc. 158, 252 N.Y.S. 259, also relied upon by the defendant, resembles the Whittemore Case and may be distinguished upon the same grounds. Likewise as to the case of New Jersey Title Guarantee Co. v. Parker, 84 N.J.Eq. 351, 93 A. 196, which is inapplicable here also for the reason that it treats the settlor's will as an irrevocable instrument having effect forthwith upon its execution whereas under the law of Connecticut a will is wholly ambulatory in effect. Whitehill v. Halbing, 98 Conn. 21, 118 A. 454, 28 A.L.R. 895. And the facts in King v. York Trust Co., 278 Pa. 141, 122 A. 227, so differ from those in the case at bar that grounds for distinction are obvious.

The defendant further contends that for purposes of the trust here in question, the court of equity has a "substantial adverse interest" within the meaning of Section 166 of the Revenue Act, and that the concurrence of such a court is a prereq-

uisite to a termination of the trust. However, the Connecticut cases cited in support of this extraordinary contention are all cases dealing with testamentary trusts and not at all involving the power, or lack of power, of a living settlor to revoke. And S.Rep. No. 665, cited by the defendant, makes it plain that the underlying purpose of Section 166 was to make trusts revocable for purposes of the Revenue Act in cases in which "the grantor has substantially the same control as if he alone had power to revoke the trust", and that the amendment embodied in Section 166 of the Act of 1932 was designed for purposes of the Act to make trust revocable and the income thereof taxable against the grantor, which otherwise would be irrevocable with the income thereof taxable only against the trust estate. If the defendant is correct in its contention that this trust, even though intended to create no estate in others than the settlor, can be terminated only by a court, it is difficult to conceive of any trust which could be terminated without court decree.

II.

Any right of defendant to additional taxes for the calendar year 1929 cannot be recouped in this action, nor is the plaintiff estopped or otherwise precluded from changing her 1929 position without first surrendering the benefits which she accepted under that position.

Comment.

The defendant concedes that if the trust is revocable the plaintiff is not estopped to show the correct treatment to be accorded to income or losses under that theory. But defendant points to the facts shown in paragraphs 6 to 8 of the findings and contends that before plaintiff, upon the theory that the trust was revocable, can be allowed to recover taxes paid on account of 1933 income, she must relinquish the sum of $2,501.88 representing the additional taxes which the defendant would have received for the year 1929 if the parties had then proceeded upon the theory that the trust was revocable. The plaintiff objects that this contention disregards the facts relating to the 1932 tax as set forth in paragraph 18 of the findings. But the view which I take of the defendant's position makes it unnecessary to consider the plaintiff's objection relating to 1932.

My general conclusion, as set forth above, is supported by any one of the four specific conclusions which I now proceed to state and discuss.

II–a.

[redacted] Under the provisions of Section 322 (b) (1) of the Revenue Act of 1932, 26 U.S.C.A. § 322(b) (1), the government is now precluded from crediting the overpayment of the 1933 tax upon the tax liability of the plaintiff for the year 1929, even assuming that such a liability still exists.

Comment.

Section 322(b) (1) expressly provides that "no such credit * * * shall be allowed or made * * * after two years from the time the tax was paid." The finding in paragraph 5 shows that the overpayment was made on September 7, 1935. Two years have since expired and it is now too late to make the credit.

II–b.

[redacted] Under Section 322(a) of the Revenue Act of 1932, 26 U.S.C.A. § 322(a), the government is precluded from crediting the overpayment of the 1933 tax upon the tax liability of the plaintiff for the year 1929.

Comment.

No deficiency was ever assessed against the plaintiff on account of the year 1929. Consequently no tax was "then due from the taxpayer" within the meaning of Section 322(a). For I construe this provision of the Act to authorize an overpayment to be credited only upon a tax which had been assessed prior to the overpayment.

The possibility of this construction of the statute was posed by the Supreme Court in McEachern v. Rose, 302 U.S. 56, at page 61, 58 S.Ct. 84, 82 L.Ed. 46. The point, however, was passed as unnecessary for a decision of that case. But as applied to the case at bar, the decision upon this branch of the case may turn upon the proper construction of this statute. The construction above indicated seems required in view of the concluding language of Section 322(a) which directs that any "balance shall be refunded immediately to the taxpayer." Surely this mandatory direction would not have been added to the permissive provisions which precede it if Congress had intended that the overpayment might be retained by the Commissioner for eventual credit against a tax deficiency not yet assessed. In the McEachern opinion the court holds it to be a legal impossibility to credit against a tax an overpayment for some later year until the overpayment is ascertained and

allowed. It is equally impossible to credit an ascertained and allowed overpayment against an inchoate tax liability not yet assessed.

## II-c.

██ No court has power, in the absence of appropriate action by the Commissioner, to ascertain and assess a deficiency against the plaintiff on account of her tax liability for 1929, or to credit upon such a deficiency an overpayment never ascertained or allowed by the Commissioner.

### Comment.

It is implicit in Section 1104 of the 1932 Act, 26 U.S.C.A. § 1670(a) (3), that action by the Commissioner is required before an overpayment may be credited upon an existing liability. See the McEachern opinion at page 61, 58 S.Ct. at page 86. And it is implicit throughout the Act that no liability for additional income taxes may be enforced until assessed by the Commissioner in accordance with the requirements of the Act. See Sections 272 and 273, 26 U.S.C.A. §§ 272, 273. The court has power not to assess, but only to adjudge the validity of administrative exactions.

### II(d).

██ Even if the court, in the absence of action by the Commissioner, had power (a) to ascertain the plaintiff's liability for a tax deficiency in 1929, and (b) to credit thereon the overpayment judicially ascertained for the year 1933, the facts of this case disclose a complete absence of equitable considerations calling for an exercise of such judicial power.

### Comment.

In the case of McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46, the court suggests that the government is not equitably entitled to credit the overpayment of income taxes for the years 1929–1931 against a tax which accrued in the year 1928 but which the government failed to assess. As I read the opinion, the court suggests that equitable grounds for the allowance of such a credit were absent because "the failure of the government to assess the appropriate tax in 1928 is not shown to be attributable to the erroneous statements made in the returns for the later years, and it is not necessary for petitioner to show understatement of the income taxable in 1928 in order to show the correct amount of the different income derived * * * in the years of overpayment." In the case at bar, the govern-ment's failure to make a proper assessment in 1929 was not attributable to any statements of the plaintiff in her return for 1933. And it is not necessary for the plaintiff, in order to show her losses and the resulting overpayment for 1933, to show any understatement of her taxable income for 1929. To be sure, here as in the McEachern Case, the taxpayer and government both fell into the error of understating the taxable income for the earlier year. But the overpayment for 1933 was not due to that earlier understatement; it related to "different income" having an existence and dimensions quite independent of any previous understatement.

To be sure, the McEachern decision was not bottomed upon the absence of equitable considerations. The court preferred to rest its decision upon Sections 607 and 609 of the Act of 1928, 26 U.S.C.A. §§ 1670(a) (2), 1675. But these sections were not carried over into the Act of 1932, and hence are not available as a base for the decision herein. And so here, I adopt as one base for my conclusion what seems to be a clear and considered dictum in the McEachern opinion.

None of the cases in the lower courts which defendant cites are inconsistent with this dictum which I have followed. I will briefly discuss them serially.

In Inland Products Co. v. Blair, 4 Cir., 31 F.2d 867, the taxpayer was held not entitled to deduct from its gross income taxes erroneously paid which were returned to it the following year, the court observing that "one who accepts the correction of a mistake is estopped to claim a benefit to which he would be entitled if it were not corrected." Thus the ruling was that if by mistake taxes for one year are paid erroneously and in a subsequent year the mistake is rectified by refunding the taxes thus paid (even though they had been paid voluntarily), the refund must be reflected in the tax return for the year when the taxes were paid. The ruling has no application here, for here the taxpayer seeks only to rectify the mistake made with respect to her 1933 taxes; the mistake which was made resulted in no benefit to her which she proposes to retain.

In Newaygo Portland Cement Co. v. Helvering, 64 App.D.C. 278, 77 F.2d 536, the court held merely that the taxpayer who had elected to deduct an interest payment of $41,230 from its 1924 return was not en-

titled also to deduct the identical item from its 1923 return, although in the absence of such an election the item would have been allowable in 1923. The plaintiff here has made no election with respect to her 1933 return which is inconsistent with her right of recovery of 1933 taxes. None of the 1933 losses which the Commissioner, erroneously as I hold, disallowed as deductions on plaintiff's 1933 return had already been deducted on her earlier returns.

Naumkeag Steam Cotton Co. v. United States, Ct.Cl., 2 F.Supp. 126, disclosed a clear case of equitable estoppel. For there the taxpayer's conduct was such as to induce the Commissioner to withhold a collection which otherwise he doubtless would have made before the statutory period had expired. Here the plaintiff has done nothing whatever to mislead.

In Hartwell Mills v. Rose, 5 Cir., 61 F.2d 441, the taxpayer filed a claim in abatement against certain tax assessments which had been improperly made because appeals therefrom were pending. It thereby and thereafter treated the assessments as properly made and even received the benefit of a stay and eventually a partial abatement. It was said, by way of dictum, that having received a benefit by acquiescing in the manner in which the assessments were made the taxpayer could not "change his position at the government's expense." Of course the force of this dictum was confined to the specific assessments there under consideration. Clearly the court did not mean to suggest that the taxpayer's conduct with respect to an assessment made in one year would affect his rights with respect to an assessment made four years later.

In United States Paper Exports Ass'n v. Bowers, 2 Cir., 80 F.2d 82, the court although recognizing the equitable flavor of an action at law against a tax collector went no further than to allow the government to offset against a valid claim against it for taxes for the year 1918 a refund erroneously made on account of the same year.

Thus I find the defendant's contention herein wholly unsupported by authority. In principle I deem it untenable, unworkable and contrary to sound policy. Much has been said about the mutuality of estoppels. If the defendant's contention be sound, and if estoppels be mutual, it would follow in cases such as this that when a deficiency is assessed by the government the taxpayer could insist upon the credit of overpayments for years long since passed although claim therefor had never been made. And in general such an over-extension of equitable principles in the tax field by increasing the difficulty of rectifying mistakes of law honestly come by would tend to foster an unhealthy growth of rigid fictions in the relationship between taxpayer and the government.

### III.

Exhibits 1 and 2 for identification may be treated as in evidence, with exception to the defendant.

### Comment.

At the trial, ruling was reserved upon these items. On consideration, I now find them admissible in view of the issues as framed. I may observe, however, that I should have considered the conclusions above stated as required quite apart from any consideration of these exhibits.

### IV.

Defendant's motion for judgment filed November 8, 1937 is denied, with exception to defendant.

### V.

Plaintiff is entitled to judgment in the principal sum of $2,548.75 with interest from September 7, 1935, and costs.

Plaintiff may submit form of judgment for settlement in chambers at New Haven on September 20, 1938, unless form of judgment is sooner agreed upon.