**PENN et al. v. ROBERTSON, Collector of Internal Revenue.**

No. 613.

District Court, M. D. North Carolina.

June 28, 1939.

Brooks, McLendon & Holderness, of Greensboro, N. C., and Paul Cohen, of Niagara Falls, N. Y., for plaintiff.

James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and Mills Kitchin, Sp. Assts. to Atty. Gen., Carlisle Higgins, U. S. Dist. Atty., of Winston-Salem, N. C., and Bryce R. Holt, Asst. U. S. Atty., of Greensboro, N. C., for defendant.

HAYES, District Judge.

This is a suit for the recovery of income taxes for the calendar year 1930 and for that period in 1931 from January 1 to October 22, 1931—the date of taxpayer's death—and is brought by plaintiffs as executors under the last will and testament of Charles A. Penn, deceased. The taxes involved were levied and collected by the Collector under the Revenue Act of 1928 (45 Stat. 791).

Charles A. Penn was vice-president and director of the American Tobacco Company in charge of production. His duties required him to be in New York and in North Carolina at various intervals, to travel and to entertain extensively. For 1930 he received a salary and bonus aggregating $372,654.29 and for

1931 the sum of $547,171.31. Decedent deducted from gross income $14,725 for necessary travel and entertainment expenses incurred while earning his compensation and the sum of $12,271 for 1931. These deductions were disallowed by the Commissioner. The Court is of the opinion that the evidence requires a finding in favor of the taxpayer. While the amount seems large and calls for careful scrutiny, still, when compared with the fabulous compensation given him, it is not unreasonable. In considering travel and entertainment expense incurred in connection with earning income, due regard should be given to whether taxpayer, in good faith, expended such items in connection with earning his income. Expenses of such a nature ought to bear some rational proportion to the income. Measured by these tests, the taxpayer is entitled to the deductions claimed.

■ On October 16, 1929, Charles A. Penn, by virtue of being an officer and director of the American Tobacco Company, was allowed to purchase 10,000 shares of its stock for $1,722,500, which was $470,000 less than its market value. This additional income resulted in an additional income tax liability of $108,000. It was not assessed nor collected and is now barred by the statute of limitations (26 U.S.C.A. § 1432).

The Commissioner treated the stock transaction as coming within the orb of an employees' trust. When the transaction was rescinded by the directors of the American Tobacco Company on December 15, 1931, the Commissioner also ruled that no estate tax accrued thereon at the death of taxpayer on October 22, 1939. The rescission resulted from litigation by some stockholders against the company and its directors, including the taxpayer, to rescind the plan of 1930 and threats to institute suits involving the 1929 plan. Rogers v. Guaranty Trust Company, Charles A. Penn et al., D.C., 53 F.2d 398; Id., 2 Cir., 60 F.2d 114; Id., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720.

Under the 1929 plan the taxpayer had the option of paying cash for his 10,000 shares or giving his note and pledging his stock and applying dividends and bonuses to the note. He elected the latter. In 1929 a bonus of $90,702.80 was earned by decedent but it was not ascertained and made available until 1930 and the decedent in 1930 earned a bonus of $181,-708.12 which was ascertained and made available to him in 1931 by crediting the same on his note.

The Commissioner now contends that the stock transaction was not an employees' trust but a purchase; that taxpayer is liable for the dividends and bonuses received and for an estate tax of $47,000 to off set the overpayment of 1931. The taxpayer asserts that the stock plan was ultra vires and void in its inception; that it was rescinded before it was consummated, that the stock and all dividends thereon were surrendered and the note cancelled, resulting in no gain or loss to the taxpayer.

The stock was unconditionally acquired and payments of dividends and bonuses thereon constituted taxable income notwithstanding possibility of transaction being rescinded in suit by aggrieved stockholders.

See Justice L. Hand's opinion in National City Bank of New York, Executor v. Helvering, 2 Cir., 98 F.2d 93. If he (taxpayer) holds with a claim of right, he should be taxable as an owner, regardless of any infirmity of his title. Also Griffin v. Smith, Collector and United States, 7 Cir., 101 F.2d 348.

Income from bonus and dividends was received free and without restriction and was taxable for the year received, notwithstanding taxpayer's liability for its restoration at the option of other stockholders. North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; United States v. S. S. White Dental Company, 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122; National City Bank of New York v. Helvering, 2 Cir., 98 F.2d 93.

Decedent being on cash receipt and disbursement basis, bonuses and dividends became taxable income to him when determined and made available.

■ In Avery v. Commissioner, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216, a dividend was declared December 31, 1924. It was put in mail but did not reach taxpayer until January 2, 1925. The Court held the dividend was income for 1925.

The income derived in 1931 on the stock under the 1929 plan would not have been taxable for the year 1931 if the taxpayer had lived. The stock transaction was rescinded in 1931 and full restitution

was made. Hence, *no profit or loss was* realized in that year. The Commissioner, however, insists that the death of the taxpayer, in 1931, before the stock transaction was rescinded in 1931, alters the situation and that the dividends and the bonus paid during the life of decedent are taxable as income because the rescission occurred subsequent to taxpayer's death. He contends that the tax period terminated with the death of taxpayer. For practical purposes and in substantially all instances these positions are sound. But laws should not be so inflexible as to work manifest injustices and to accomplish results contrary to the reasonable purposes of legislation. This case is one of a relatively few cases standing on similar facts. And an injustice should not be worked here by blindly following and applying rules of general application. Had the taxpayer lived, he would have restored the dividends and bonus and the stock upon which they were received. The other officers of the American Tobacco Company did it and it is inconceivable that he would have held it in the face of the dissenting opinion in Rogers v. Guaranty Trust Co., 2 Cir., 60 F.2d 114. See Rogers v. Guaranty Trust Co., 288 U.S. 123, 133, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720, et seq. It is clear that the taxpayer could not have defended successfully his title to the stock. Hence *the surrender of it together* with the dividends and the bonuses received thereon in the calendar year 1931 actually resulted in no profit or loss to the taxpayer or his estate. Since the estate's title to the stock was invalid, the executors under advice of eminent counsel did that which the courts would have done, —they voluntarily gave back what they had received. The estate was not enriched by the stock; what the taxpayer received was also paid back out of the estate. The Commissioner has furnished no case directly in point nor has the court been able to find one sustaining the Commissioner's contention. If the taxpayer is taxable on this income, it follows that the executors are liable for estate taxes. Such a result is manifestly unjustified in fact and seems to me *utterly out of line* with my conception of justice. The rescission of the stock plan by the executors together with the return of the bonus and dividends for 1931 received by decedent extinguished what otherwise would have been taxable income for 1931. Therefore I *hold that there was no income from* either of these sources in the calendar year 1931.

It is insisted by the Commissioner that the deficiency for the year 1929 should be deducted from the overpayment on the authority of Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421. But the facts of the instant case bring it within the rule announced in McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46, holding that a tax already barred can not be off-set against an overpayment.

It follows that plaintiffs are entitled to recover the overpayment for 1931 and the overpayments resulting from the disallowance of the entertainment and travel expenses, but they are not entitled to recover for 1930. Judgment will be entered accordingly.