**MISSOURI PUBLIC SERVICE COM-
PANY, Plaintiff,**

v.

**The UNITED STATES of America,
Defendant.**

**Civ. A. No. 13414–4.**

United States District Court
W. D. Missouri, W. D.

June 25, 1965.

Albert F. Hillix, Richard H. Brown, William K. Waugh, Jr., of Hillix, Hall, Childers, Brown & Hoffhaus, Kansas City, Mo., for plaintiff.

F. Russell Millin, U. S. Atty., Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, Jerome Fink, William A. Miner, Attys., Tax. Div., Dept. of Justice, Washington, D. C., for defendant.

BECKER, Chief Judge.

This is a suit for a refund of federal income taxes in which the plaintiff corporation is a public utility engaged in the manufacture, distribution, and sale of electric power and in the distribution and sale of natural gas and water. The complaint is in three counts. Count I seeks a refund of income taxes for the calendar year 1955. Count II seeks a refund of income taxes for the calendar year 1956. Count III seeks a refund of income taxes for the calendar year 1957. The plaintiff timely filed income tax returns for the years in question. In October 1958, the income tax returns for the years in question were audited by the Internal Revenue Service. As a result of this audit, a report was prepared making certain adjustments to the taxable income as reported by the plaintiff which would result in the increase of plaintiff's income tax liability for the following years in the following amounts:

| Year | Additional Tax Liability |
|------|--------------------------|
| 1955 | $12,949.19 |
| 1956 | 20,913.26 |
| 1957 | 57,868.38 |

Upon receipt of notice of the proposed assessments of deficiencies, the plaintiff executed a Treasury Department Form 870 waiving restrictions on the assessments and collection of the deficiencies. Pursuant to the waiver, the proposed deficiencies were assessed and were thereafter paid on December 31, 1958, with interest as provided by law. Thereafter, plaintiff timely filed an amended claim for refund.

It is agreed by the parties that the plaintiff has complied with all conditions precedent to the bringing of this action and that this Court has jurisdiction to determine the controversies involved therein under Section 1346 of Title 28, United States Code.

The principal issues in this case are common to each of the three tax years involved. Therefore, the tax liability for the three years will not be discussed separately unless the matter under discussion requires it.

## QUESTION PRESENTED

The question is whether the premature attempted election of the plaintiff utility in its original income tax returns for 1954, 1955, 1956, and 1957, to use elective

methods of depreciation of properties acquired in 1954, 1955, and 1956 but not put into use and service (and therefore not depreciable until the next year), are binding for subsequent years.

## STATUTE INVOLVED

The statute involved is Section 167, I.R.C.1954, which reads as follows:

"§ 167. *Depreciation*

"(a) *General rule.*—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income.

"(b) *Use of certain methods and rates.*—For taxable years ending after December 31, 1953, the term 'reasonable allowance' as used in subsection (a) shall include (but shall not be limited to) an allowance computed in accordance with regulations prescribed by the Secretary or his delegate, under any of the following methods:

"(1) the straight line method,

"(2) the declining balance method, using a rate not exceeding twice the rate which would have been used had the annual allowance been computed under the method described in paragraph (1),

\* \* \* \* \* \*

Nothing in this subsection shall be construed to limit or reduce an allowance otherwise allowable under subsection (a)."

## REGULATIONS INVOLVED

The Treasury Regulations involved are Sections 1.167(a)–10, Section 1.167(c)–1, and Section 1.167(e)–1, which read as follows:

"§ 1.167(a)–10. *When depreciation deduction is allowable*

"(a) A taxpayer should deduct the proper depreciation allowance each year and may not increase his depreciation allowances in later years by reason of his failure to deduct any depreciation allowance or of his action in deducting an allowance plainly inadequate under the known facts in prior years. The inadequacy of the depreciation allowance for property in prior years shall be determined on the basis of the allowable method of depreciation used by the taxpayer for such property or under the straight line method if no allowance has ever been claimed for such property. The preceding sentence shall not be construed as precluding application of any method provided in section 167 (b) if taxpayer's failure to claim any allowance for depreciation was due solely to erroneously treating as a deductible expense an item properly chargeable to capital account. \* \*"

"§ 1.167(c)–1. *Limitations on methods of computing depreciation under section 167(b) (2), (3), and (4)*

\* \* \* \* \*

"(c) *Election to use methods.* Subject to the limitations set forth in paragraph (a) of this section, the methods of computing the allowance for depreciation specified in section 167(b) (2), (3), and (4) may be adopted without permission and no formal election is required. In order for a taxpayer to elect to use these methods for any property described in paragraph (a) of this section, he need only compute depreciation thereon under any of these methods for any taxable year ending after December 31, 1953, in which the property may first be depreciated by him. The election with respect to any property shall not be binding with respect to acquisitions of similar property in the same year or subsequent year which are set up in separate accounts. If a taxpayer has filed his return for a taxable year ending after December 31, 1953, for which the return is re-

quired to be filed on or before September 15, 1956, an election to compute the depreciation allowance under any of the methods specified in section 167(b) or a change in such an election may be made in an amended return or claim for refund filed on or before September 15, 1956."

"§ 1.167(e)–1. *Change in method*

"(a) *In general.* Any change in the method of computing the depreciation allowances with respect to a particular account is a change in method of accounting, and such a change will be permitted only with the consent of the Commissioner, except that the change from the declining balance method to the straight line method as provided in section 167(e) shall be permitted ·without consent. \* \* \* "

## FACTS

All of the facts were stipulated by the parties.

In the years 1954, 1955, 1956, and 1957, the plaintiff utility, in addition to other capital assets acquired and put in use and service in such years, acquired certain capital assets which were not put in use and service until the following year. Such assets were set up in separate accounts from other assets in the plaintiff's tax records. Mistakenly believing that the assets so acquired were subject to depreciation and election as to the method of depreciation under Section 167 in the year of acquisition, the plaintiff in its depreciable property accounts began the depreciation of the properties in the years of acquisition. In beginning the depreciation in the years of acquisition, the plaintiff made purported elections under Section 167 as to the methods of depreciation to be employed. In its original income tax returns for the calender years of acquisition, the plaintiff claimed depreciation according to the methods elected in the preparation of its accounts for those years. For the property in question acquired in the calendar years 1954, 1955, and 1957, the plaintiff attempted to elect to use the straight line method of depreciation in its accounts and in its original returns for those years. For the property in question acquired in the calendar year 1956, the plaintiff attempted to elect in its accounts and its original return for that year, to use the declining balance method.

In the course of the audit of the plaintiff's returns for the years 1954 to 1957, inclusive, the Internal Revenue Service of the defendant asserted generally that the assets were not subject to depreciation until they were first put in use and service; that applying the rule to the years in question, the assets in question acquired in 1954 to 1957, inclusive, were not subject to depreciation until they were put in use and service in the year following the year of their acquisition. After extended controversy, the plaintiff acquiesced in the assertion of the agents of the defendant and now agrees that the properties in question were not first depreciable in the year of acquisition.

Prior to 1960, the plaintiff filed claims for refund in which it undertook to elect the declining balance method for each year in question. Thereafter, in October 1960, having acquiesced in the ruling of the agents of the defendant, the plaintiff filed amended claims for refund of taxes for the years 1955, 1956, and 1957. At the same time, the plaintiff filed amended income tax returns for the years 1955, 1956, and 1957, in which it attempted to make a new election for each of the years to depreciate the property acquired in the previous year but first put in use and service in each such year on the declining balance method.

The Commissioner of Internal Revenue refused at all times to give his consent to any change in the method of depreciation contained in the amended returns and claims for refund.

In denying plaintiff's claims for refund, the Commissioner denied all claims for depreciation in 1954 for the reason that, although plaintiff had acquired some assets in 1954, the property acquired was not put into use and service until 1955.

The Commissioner denied the claim for use of the declining balance method in the years 1955 and 1957, and allowed depreciation solely on the straight line method of computation for the years 1955 and 1957, because in those years the straight line method was used by the plaintiff for other properties first properly depreciable in those years. Because in 1956 the plaintiff had properly elected to depreciate other properties first depreciated on the declining balance method, plaintiff was allowed to use the declining balance method for the properties acquired in 1955, but first put in use and service in 1956.

The plaintiff contends that its attempts to elect allowable methods of depreciation in its original returns for 1954 to 1957, inclusive, in respect to property acquired in each year but first put in use and service in the following year "amounted to no election"; that "inasmuch as the Commissioner has determined that such property could not be depreciated in the taxable calendar year * * * any choice of a method of depreciation by the plaintiff in the original return of such year covering such property would be a nullity * * *."

The defendant contends that, when for the years 1954, 1955, and 1957, the assets were grouped in composite accounts of the taxpayer and depreciation claimed by the taxpayer on the straight line method under Treasury Regulations, Section 1.167(c)–1, the time to elect the declining balance method of depreciation expired on September 15, 1956; that thereafter a change in the method of accounting (except from declining balance method to straight line method) required the consent of the Commissioner, which has not been secured.

The contentions of neither of the parties are considered wholly sound.

What appears here are *premature elections* of permissible[1] (valid allowable) methods of depreciation. The methods elected were clearly expressed, were referable to identifiable property, and were unequivocally recorded in the plaintiff's accounts and upon its original returns. There was no failure to make elections for the property in question. As pointed out by the defendant, the time for changing the elected methods of depreciation without the consent of the Commissioner had expired when the amended returns with new elections were filed with the amended claims for refund.

This is not a case where the election was made known to the agents of the defendant but was not properly recorded in the return and discretion abused in refusing to allow an amended return to be filed, as in the recent case of Bookwalter v. Mayer (C.A. 8) 345 F.2d 476.

There seem to be at least four principal alternatives available in deciding this case.

The first alternative is to hold that the Commissioner abused his discretion in refusing to recognize the elections made by the plaintiff in amended returns for the respective years, filed in 1960, and in refusing to recognize the elections in the claims for refund.

The second alternative is to approve the actions of the government applying the method of depreciation elected for all years in question in respect to other properties properly depreciated in those years.

The third alternative is to treat each attempted election as applicable to the properties acquired in the preceding year and put in use and service the year the election was made. This alternative

---

1. Mamula v. Commissioner (C.A.9) 346 F.2d 1016 is consistent with this opinion. It involved an attempt, mistakenly to elect an unallowable choice, which was properly held to be no election at all. The principle on which most cases can be reconciled is that the taxpayer should be allowed one conscious deliberate election of an allowable choice, but is bound thereby unless for good cause the Commissioner in his discretion approves a change in the original choice. This discretion must not be arbitrarily exercised. A conscious failure to elect an allowable choice is an election in installment cases.

seems to conflict with Regulation Section 1.167(c).

■ The fourth alternative, and the one considered in this opinion to be the proper one, is to give full effect to the premature elections made in the original returns. There is certainly no prejudice to the defendant or to the plaintiff in holding that the original premature elections are effective for each year in which they lawfully could be made.

To approve the contentions of the defendant would require that the premature election of the declining balance method made in the original return for the year 1956, and clearly referable to the property put in use and service in 1957, should not be recognized. This would seem to be an unlawful and inequitable result.

[2] To follow the plaintiff in its contentions that, although clear and unequivocal premature elections had been made, new elections must be permitted years later without the consent of the Commissioner, would permit taxpayers retrospectively to change elected methods of depreciation and thereby change apparently previously incurred tax liabilities at will, and in a combination which would produce the least tax liability.

Neither the purposes of Regulation Section 1.167 including stimulation of capital expenditures nor its wording permit such a ruling, which would give unjustifiable and preferential treatment to taxpayers who failed to follow the law concerning the time to begin depreciation. Compare J. E. Riley Investment Co. v. Commissioner, 311 U.S. 55, at page 59, 61 S.Ct. 95 at page 97, 85 L.Ed. 36 at page 39.

## AUTHORITIES DISTINGUISHED

No case directly in point on the question presented in this case has been cited by counsel or found. Numerous cases upon questions asserted by the parties to be analogous have been cited but found to be inapplicable.

For instance, the plaintiff relies strongly upon Frito-Lay, Inc. v. United States (N.D.Ga.) 209 F.Supp. 886. In that case the taxpayer attempted to deduct as rents, payments made upon a purported lease. There was no election in the original return concerning methods of depreciation. Upon audit, the Commissioner determined that the so-called rental expenses were capital investments subject to depreciation. The taxpayer, after the original assessment, elected to use the declining balance method of depreciation. The government conceded the validity of this election which consequently was not litigated or determined. The case is distinguishable from this case upon the grounds (1) that no election had been made in respect to the property until after the assessment, and (2) the validity of the subsequent election was not contested by the government and apparently was approved by the Commissioner. This policy of approval is now incorporated generally in the federal income tax law. Reg. Sec. 1.167(a)–10 (a). Similar cases, where the capital investment was originally depreciated as an expense without an election and thereafter reclassified, are not in point. Other cases involving a failure to make a timely election of the method of depreciating capital assets are not in point.

A number of cases are cited by the plaintiff involving elections to report long term capital gains on the installment method. These include cases such as Bayley v. Commissioner, 35 T.C. 288, wherein the taxpayers reported a gain from the sale of their principal residence claiming it was entitled to nonrecognition of the gain by reason of the provisions contained in Section 1034, Int.Rev.Code of 1954. After the Commissioner had determined that the taxpayers were in error on the non-recognition point, the taxpayers requested that they be allowed to compute the gain on the installment method. The Tax Court held that the taxpayers had made no election originally and that the Commissioner had recognized the right of taxpayers to make an election after the adverse determination on non-recognition, citing Rev.Rul. 56–396, 1956–2 Cum. Bull. 298. This case obviously did not

involve a premature election. The recent case of Bookwalter v. Mayer, supra, is similar in result. All the cases on elections to treat capital gain on the installment method cannot be reconciled. Compare Ackerman v. United States (C.A. 10) 318 F.2d 402, wherein a strict rule against an untimely election of installment method is applied. The plaintiff relies upon Goldstein v. United States (C.A. 8) 227 F.2d 1, which did not involve any election by the plaintiff's stockholders or any right to make an election. The question there was whether or not the government was estopped to deny the refund of income taxes paid by the plaintiffs voluntarily as partners, when the government had in another proceeding against co-partners of the plaintiff erroneously decided that the plaintiffs were not in fact partners. Commissioner of Internal Revenue v. Mnookin's Estate (C.A. 8) 184 F.2d 89, did not involve depreciation but involved the power of the Commissioner to circumvent the statute of limitations by adding to the taxpayer's gross income for a year open under the statute of limitations, an item which rightfully belongs to an earlier year.

On another subject it should be stated that the contentions of the defendant that, by continuing to depreciate the properties in the next years after and in accordance with the premature original elections, plaintiff made reelections or new elections, have been considered. This theory, while producing the same result as this opinion, is not believed to be sound. There were no conscious, deliberate elections in the next years following original years of premature elections, by continuing to depreciate the properties in accordance with the original elections.

It would not be profitable to review more of the many cases cited by counsel for the parties, inapposite because of the absence of direct controlling authority.

Because of the foregoing reasons, it is concluded that both the plaintiff and the defendant are bound by the premature elections made by the plaintiff in the years 1954 to 1957, inclusive, in respect to properties acquired in those years and put in use and service in the following years.

After this conclusion was announced to counsel in the course of a conference and argument, it became apparent from the tax accounting involved that application of this ruling would result in the following: (1) no deficiency and no overassessment of tax for 1955; (2) a deficiency in tax in the sum of $4,304.31 for 1956 (for which no assessment had been made); and (3) an overassessment of $11,776.04 for 1957.

The possibility of this deficiency for 1956 was apparently not anticipated by the defendant, and no claim for offset or equitable recoupment on account thereof was made in the original pleadings. After the ruling, the defendant was granted leave to amend its answer to interpose an alternative defense of equitable recoupment for the deficiency in the sum of $4,304.31 for the year 1956, the assessment of which was admittedly barred by the statute of limitations. The leave to interpose the defense of equitable recoupment by amendment was granted without prejudice to the plaintiff's right to assert the impropriety of permitting such equitable recoupment. No request for leave to file a counterclaim was made.

■■■ The propriety of permitting the defense of equitable recoupment generally is ably discussed by the majority and minority of the Court of Claims in Dysart v. United States (Ct.Cl.) 340 F.2d 624. Since the cause for the disagreement between the majority and minority in the Dysart case is not material in this case, the review of the law by the majority will be applied in this case. See 340 F.2d 624 at pages 627 to 629, part of which, with emphasis added, reads as follows:

"At the outset it should be pointed out that the defense of recoupment in a refund suit should not be confused with the broader and more

fundamental defense of lack of overpayment of the particular tax involved in the suit for refund, traceable to the landmark decision by the Supreme Court in Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932). The former involves attempts to set off tax liability from one year against that for another year after the statute of limitations has run[2] (2 E. g., McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937).) or where attempts are made to set off the tax liability of one taxpayer against that of a second taxpayer.[3] (3 E. g., Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937).) This type of defense has been commonly referred to as 'equitable recoupment.' *In these situations where the challenged item arose in a year other than in suit or where different parties are involved, the defense may only be maintained where a single or same transaction is involved.*[4] (4 See Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935) (this case is sometimes cited as the originator of this doctrine); Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946).)

"On the other hand, where both the taxpayer's claim and the government's setoff concern the same tax for the same year by the same taxpayer, the government's right to raise such a defense is unconditional and need not meet the 'same transaction' requirement of the equitable recoupment defense. *Here the right of the government is based on the broader principle that a taxpayer is not entitled to a refund unless he has in fact overpaid the particular tax, while in 'equitable recoupment' the right to raise such a defense is based on the more limited principle that a party should not gain the protection of the statute of limitations where he has given a different tax treatment to the same transaction in different years.*[5] (5 The same rationale applies where the same year is involved but you have related taxpayers. Stone v. White, supra.) Although the origin of these defenses may be traced to equitable principles, the right to raise a setoff is not subject to equitable considerations as taxpayers contend. We believe that both the government and the individual taxpayer have the legal right to raise a setoff without having to appeal to the court's discretion or to its evaluation of the particular equities. We find support for this conviction in the fact that Congress has chosen to incorporate the doctrine of 'equitable recoupment' into our revenue laws by what is now commonly known as the mitigation provisions, sections 1311–1315 of the Internal Revenue Code of 1954. In so doing, Congress has enumerated a series of requirements which have to be met before these sections become operative and recoupment allowed. It is significant that none of these requirements are based on equitable considerations. If the requirements are met, there is no room for the court to look at the 'equities' involved in each particular case and prevent their operation. We believe the same rationale should apply to the broader and more fundamental defense of lack of overpayment raised by the setoff defense involved in the instant case.

"The crucial factor in this refund suit is that both the taxpayers' claim and the government's setoff concern the same tax (income tax) for the same year (1954) by the same taxpayer. The government seeks the opportunity to balance against the $4,548.48 income tax penalty for 1954 (now admitted to have been erroneously collected) other income tax for 1954 which these taxpayers are said to have failed to report and pay. The established doctrine of setoff in tax cases gives the government that right. There is

no room, in this situation, to deny the government its right of setoff because the taxpayers' claim is relatively small, or the government's counterdemand will put them to a burdensome trial, or because the underlying facts (leading to liability in 1954) are old and complex, or the Internal Revenue Service had a previous opportunity to assess the underpaid tax. To uphold the government's right to maintain the defense in this case, it is sufficient that the setoff *involves the same type of tax, payable by these taxpayers, for the same year as the taxpayers' claim.*

\* \* \* \* \* \*

"The Supreme Court has neither weakened nor departed from this rule which is a corollary of the basic postulate of the tax setoff. In Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946), involving equitable recoupment as opposed to the defense of setoff, the Court did declare that the doctrine of equitable recoupment should not be broadly applied, but the instances to which the Court referred all had to do with taxes for different years, to disparate kinds of taxes, or to separate taxpayers. There is nothing in the opinion qualifying or limiting the defense of lack of overpayment *where the refund claim and the setoff both relate to the same tax, for the same year, payable by the same taxpayer.*[6] (6 McEachern v. Rose, 302 U.S. 56, 57, 59, 58 S.Ct. 84, 82 L.Ed. 46 (1937), involved different and unconnected tax years.)"

Assuming (without holding) that it would not be inequitable to permit the defendant to recoup the deficiency for 1956, the question remains whether the statute of limitations, construed in the light of the doctrine of equitable recoupment, bars the recoupment or setoff. Equitable recoupment should not be permitted between the same parties where the challenged item arose in a year other than that in suit unless the same transaction is involved. Dysart v. United States, supra; Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296; McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46; Wood v. United States, (C.A. 2) 213 F.2d 660.

In this case, the same parties are involved in 1956 and 1957, but the years are not the same. The remaining question then is whether the transaction is the same. Under the conclusions reached in this case, the transactions are different. The transaction involved in the tax liability for 1956 is the depreciation of an identifiable group of assets purchased in 1955 and put in use and service in 1956. The transaction involved in the tax liability for 1957 is the depreciation of an identifiable group of assets purchased in 1956 and put in use and service in 1957. It is not enough to make the doctrine of recoupment applicable that this suit contains three counts, two of which involve the years in question, 1956 and 1957. The result should not be different because there is one suit with multiple counts rather than multiple suits.

The doctrine of Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293, is not applicable because the year in issue in which the barred deficiency is asserted is a year in which the plaintiff taxpayer has failed to establish any overassessment. In that year there is no gross adjustment to be made in favor of the taxpayer against which a deficiency may be offset to eliminate or reduce the gross overassessment to a net figure or to zero.

In accordance with these findings and conclusions, plaintiff is held to be entitled to recover the overassessment for 1957 in the principal sum of $11,776.-04, with interest as allowed by law. It is therefore

Ordered and adjudged that plaintiff take nothing upon its claim for relief in Counts I and II of its complaint. It is further

Ordered and adjudged that upon Count III of its complaint plaintiff have and recover of and from the defendant the principal sum of $11,776.04 with interest as allowed by law, and its costs in its behalf expended.