CARLISLE B. ROBERTS, Judge.
 

 The plaintiff appealed to this court from the defendant’s Order No. VL 80-167, dated April 11, 1980. The defendant demurred to the plaintiff’s first amended complaint on the ground that the complaint did not state a cause of suit and, further, that the time in which relief from taxation could be granted had expired. The court and counsel agreed that the defendant’s demurrer, filed on July 8,1980, should be treated as a motion to dismiss the amended complaint, pursuant to ORCP Rule 21 A.
 
 [1]
 

 As in the case of the former demurrer, the motion to dismiss admits as true all the facts in the complaint which are well pleaded and all the intendments and inferences therefrom that can properly and reasonably be drawn.
 
 [2]
 

 Lincoln Loan Co. v. State Hwy. Comm.,
 
 274 Or 49, 545 P2d 105 (1976);
 
 Pacific Building v. Tax Commission,
 
 241 Or 525, 407 P2d 263 (1965).
 

 In its amended complaint, the plaintiff states (and the defendant, by its motion to dismiss, except for items (8) and (9), has admitted, for purposes of its motion) (1) that plaintiff is and was an Oregon corporation with its principal place of business in Portland; (2) that by letter dated June 1, 1978, the Director of the Hood River County Department of Records and Assessments (hereinafter referred to as the "county assessor” or "assessor”) notified plaintiffs that real property which plaintiff leased from the Port of Cascade Locks would be treated as omitted property under ORS 307.110 and that additional tax would be levied
 
 *[430]
 
 thereon for the tax years 1973-1974 through 1977-1978, inclusive; (3) that plaintiff appealed the assessment to the defendant in timely fashion, requesting defendant to determine that no additional tax was payable as a result of the omitted property assessment for any of the tax years in question; (4) that plaintiff is aggrieved by the denial of its petition by the defendant’s order dated April 11, 1980 (a copy of said order being attached to the complaint as Exhibit 1); (5) that in the tax years in question, plaintiff operated a sawmill in Cascade Locks and all assessable real property owned, leased or controlled by plaintiff (with one small exception) was part of and associated with this sawmill and its operation; (6) that plaintiff timely paid the tax assessed by the county assessor in each of the tax years in question, with the total value assessed shown on the annual statement of taxes running from a little less than $3,000,000 in 1973-1974 and increasing to a little over $5,000,000 by 1977-1978; (7) that the true cash value of all plaintiff’s real property located in the comity, including the leasehold interest in the land leased from the Port of Cascade Locks, was no greater than $2,000,000 on each of the assessment dates for the years in question; (8) that the general doctrine of equitable recoupment is applicable to the proposed omitted property tax assessments, requiring an offset in the amount of any overpayments of real property tax paid for the same tax years, as to which refunds are barred by the applicable statute of limitations; (9) that, although refunds of overpayments by plaintiff are barred by statute, these overpayments should be credited against the omitted property tax assessments at issue; and (10) that the overpayment of real property tax by plaintiff in each year in issue exceeds the proposed omitted property tax assessments for each of such years.
 
 [3]
 

 
 *[431]
 
 Items (8) and (9), above, raise legal questions which must be answered in connection with both grounds of defendant’s motion to dismiss.
 

 Defendant’s second ground for its motion is "* * * that the time for appeal of the value of the sawmill property as recited in paragraph six of plaintiff’s complaint has expired.” This is surplusage; plaintiff, in paragraph 9, page 3, lines 17-21, of its complaint, has agreed that its overpayments of tax (admitted by the defendant for purposes of its motion) cannot be recovered by claims for refunds because of the applicable statute of limitations, but it affirmatively pleaded the doctrine of equitable recoupment in paragraph 8
 
 *[432]
 
 of its complaint and prayed for an order of this court, determining "that the omitted property tax assessments proposed by Hood River County [on the leased bare land] be eliminated, or reduced by such dollar amount” as the court determines to be appropriate.
 
 [4]
 

 A legal question is presented by plaintiffs pleading of the doctrine of equitable recoupment. This was addressed by counsel in their written and oral arguments; i.e., is the doctrine of equitable recoupment applicable under these pleaded facts, serving the plaintiff by nullifying the applicable statute of limitations on claims for refund of the allegedly overpaid taxes and allowing an offsetting of the taxes imposed through the omitted property assessments in the amount of overpayment in each taxable year, but not to exceed the amount of additional tax assessed for that year?
 

 The nature and scope of the remedy of recoupment in contractual matters is well described in 20 Am Jur2d 231, § 6, as follows (with citations to footnotes omitted):
 

 "Recoupment is sometimes spoken of as a rule of strict justice, or as based on the principle that it is just to settle both sides of a transaction at once. It is a method of preventing circuity of action, and rests on a principle that to avoid circuity and multiplicity of actions a defendant should be allowed, at his election, to give in evidence matters growing out of the same transaction by way of defense, instead of being required to file a cross action, when this can be done without violation of legal principles or great inconvenience in practice. The doctrine of recoupment does not allow one transaction to be offset against another, but only permits a transaction which is made the subject of suit, by the plaintiff to be examined in all its aspects and a judgment to be rendered that does justice in view of the transaction as a whole. It is said to be based on the doctrine of failure of consideration; it looks through the whole contract, treat
 
 *[433]
 
 ing it as an entirety, and treating the things done and stipulated to be done on one side as the consideration for the things done and to be done on the other. It must be predicated on a factor which would vitiate a contract either in whole or in part as of the time the contract was made.
 

 "Recoupment exists in equity as well as at common law, and has been said to be equitable in nature. It reduces the claim affirmatively urged so far as in reason and conscience it ought.”
 

 "Recoupment” has been defined in
 
 Krausse v.
 
 Greenfield, 61 Or 502, 123 P 392 (1912) and in
 
 Rogue River Management Co. v. Shaw,
 
 243 Or 54, 411 P2d 440 (1966), and distinguished from setoff and counterclaim. The Oregon court has held that the doctrine is confined to matters arising out of and connected with the transaction or contract upon which the suit is brought; it has no regard to whether the claim, at the time of trial, is liquidated or unliquidated; and if the party’s claim exceeds the amount sought by the other party, claimant can only obtain credit for that amount which is not in excess of the recovery sought.
 

 The Oregon cases arose out of contract, but it appears that the doctrine of equitable recoupment has been considered in a substantial number of tax cases. The tax application of the doctrine may have arisen in the first instance following the important decision in
 
 Lewis v. Reynolds,
 
 284 US 281, 52 S Ct 145, 76 L ed 293, 10 AFTR 773, 3 USTC ¶ 856 (1932), recognizing the federal government’s power to avoid the effect of its own laches in certain situations. The facts in that case show that an administrator had filed a return for the 1920 tax year, asserting a number of deductions, including one for attorney fees. In 1925, the Commissioner of Internal Revenue, having audited the return, disallowed all deductions except the one for attorney fees and assessed a deficiency. This deficiency was paid and, in 1926, the petitioners asked that it be refunded. Although the time in which the IRS could claim additional taxes had passed, the commissioner, by letter, advised the administrator that, on further
 
 *[434]
 
 study, the deduction for attorney fees had been improperly allowed and, in a revised computation, he showed a liability greater than the total sums theretofore exacted. On appeal, part of the added governmental claim was sustained by the District Court, the Circuit Court of Appeals and the U. S. Supreme Court. Mr. Justice McReynolds stated:
 

 "While the statutes authorizing refunds do not specifically empower the Commissioner to reaudit a return whenever repayment is claimed, authority therefor is necessarily implied.
 
 An ovejpayment must appear before refund is authorized.
 
 Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.” (Emphasis supplied.)
 

 It was thus established that in order for the United States to offset barred taxes against a claim for a refund, it must establish that the taxes are due and that it would be inequitable to permit the taxpayer to recover the amount of his claim without such offset. In the leading case of
 
 Bull v. United States,
 
 295 US 247, 55 S Ct 695, 79 L ed 1421, 15 AFTR 1069, 35 USTC ¶ 9346 (1935), where the government asserted a deficiency in tax and the taxpayer had a barred claim for refund, it was held that the equities favored the taxpayer rather than the United States and that the taxpayer could, in fact or in legal contemplation, cut down or extinguish the ■ government’s claim by applying to it the barred claim for refund if the circumstances were such as to permit an equitable recoupment. The court found that while the same sum of money in different aspects may be the basis of both income tax and estate tax, the facts did not justify such treatment in this case and double taxation had resulted. The taxpayer could not act affirmatively upon these facts because of the running of the period of limitations. However, the comb held that although a statute of limitations may bar the recovery by the taxpayer of a federal estate tax erroneously assessed
 
 *[435]
 
 on the theory that certain monies received by the executor of the decedent’s estate were part of the corpus of the estate, the estate is entitled to have the amount so paid credited on an income tax subsequently assessed in respect of such monies under the doctrine of equitable recoupment. The court found that recoupment, being in the nature of a defense arising out of some feature of the transaction upon which the plaintiff’s action is grounded, is never barred by the statute of limitations so long as the main action itself is timely.
 
 [5]
 

 In reaching his decision in the
 
 Bull case, supra,
 
 Mr. Justice Roberts described in detail the great difference in procedure in the levying and collection of a tax as compared to an action on a contract:
 

 "* * * Thus, the usual procedure for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, nomially on the claimant, is shifted to the taxpayer. The assessment supersedes the pleading, proof, and judgment necessary in an action at law, and has the force of such a judgment. The ordinary defendant stands in judgment only after a hearing. The taxpayer often is afforded his hearing after judgment and after payment, and his only redress for unjust administrative action is the right to claim restitution. But these reversals of the normal process of collecting a claim cannot obscure the fact that after all what is being accomplished is the recovery of a just debt owed the sovereign. * * *
 

 "In a proceeding for the collection of estate tax, the
 
 *[436]
 
 United States through a palpable mistake took more than it was entitled to. Retention of the money was against morality and conscience. But claim for refund or credit was not presented or action instituted for restitution within the period fixed by the statute of limitations. If nothing further had occurred, congressional action would have been the sole avenue of redress.
 

 "In July, 1925, the government brought a new proceeding arising out of the same transaction involved in the earlier proceeding. This time however, its claim was for income tax. The taxpayer opposed payment in full, by demanding recoupment of the amount mistakenly collected as estate tax and wrongfully retained. * * * While here the money was taken through mistake without any element of fraud, the unjust detention is immoral and amounts in law to a fraud on the taxpayer’s rights. * * * A claim for recovery of money so held may not only be the subject of a suit in the Court of Claims, as shown by the authority referred to, but may be used by way of recoupment and credit in an action by the United States arising out of the same transaction. * * *”
 

 The court held that, although the money was treated as being subject to income tax in one procedure and the estate tax in another, it was essentially one transaction and that recoupment is not barred by the statute of limitations so long as the main action itself is timely.
 

 In
 
 National Cash Register Co. v. Joseph,
 
 299 NY 200, 86 NE2d 561, 12 ALR2d 812 (1949), it was held that in a tax case in which equitable recoupment had been pleaded, the "same transaction” rule was met when a claim for sales taxes alleged to have been erroneously collected was pleaded in recoupment of an alleged sales tax deficiency for the same period, even though the time for filing a claim for refund had expired.
 

 The same tax years must be involved when recoupment is pleaded. Where a taxpayer obtained a refund in 1935 for excise taxes paid for years 1922 to 1926, inclusive, the taxpayer could not at the same time recoup an amount of excise taxes paid for the years
 
 *[437]
 
 1919 through 1921 against additional tax caused by inclusion of refund as income for the year 1935, since refund of excise taxes paid for the years 1919 to 1921, inclusive, were barred by the statute of limitations and were not within the time period for which recoupment was properly sought.
 
 Rothensies v. Electric Storage Battery Co.,
 
 329 US 296, 67 S Ct 271, 91 L ed 296, 35 AFTR 297 (1946). The decision held that the "re-coupment” doctrine in tax matters cannot allow one transaction to be offset against another but a transaction which is made the subject of suit by plaintiff can be examined in all its aspects and judgment can be rendered that does justice in view of the one transaction as a whole. (The opinion by Mr. Justice Jackson in this case contains a strong statement of the importance of and the equitable aspect of statutes of limitation.)
 

 Pond’s Extract Co. v. U. S,
 
 134 F Supp 476 (Ct Cl 1955), 48 AFTR 174, 55-2 USTC ¶ 49,152, follows the decision in
 
 Bull, supra,
 
 and quotes
 
 Rothensies,
 
 supra:
 

 " * * In both cases a single transaction constituted the taxable event claimed upon and the one considered in recoupment. In both, the single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due.’ ”
 

 It quotes the Supreme Court in that "the doctrine of recoupment should not be expanded in tax cases.” It then adds:
 

 "The task of distinguishing between factual situations that warrant the application of equitable recoupment in tax cases is admittedly a difficult one, and the distinction when made in some cases will be a tenuous one. * * *"
 
 [6]
 

 
 *[438]
 
 (On this point
 
 see
 
 Annot, 12 ALR2d 815, 822 (1950), "Claim of government against taxpayer (or one in privity with him) which is barred by lapse of time as available to defeat or diminish claim of taxpayer against government, or vice versa.”)
 

 The Court finds that the doctrine of equitable re-coupment is applicable in the present suit.
 

 In its argument against the use of equitable recoupment herein, the defendant cited
 
 Nepom v. Dept. of Revenue,
 
 272 Or 249, 536 P2d 496 (1975), as barring a claim for recoupment by the plaintiff on the ground that, under
 
 Nepom,
 
 a tax on improvements to real property was a different and separate transaction from that on land only, under the real property tax law. The court concludes, after study of the
 
 Nepom
 
 case and
 
 Oregon Broadcasting Co. v. Dept. of Revenue,
 
 287 Or 267, 598 P2d 689, that
 
 Nepom
 
 stands for only one rule; viz., that separate appeals, challenging the value of the
 
 improvements
 
 to real property or the value of
 
 the real property itself,
 
 are permissible, and that the valuation of the whole property does not have to be determined on a unit basis, as a procedural matter. Unless an issue is raised before the tax court, the Supreme Court will not consider it. In
 
 Nepom,
 
 the issue of the value of the land only was not raised; in
 
 Oregon Broadcasting,
 
 the issues as to the value of the land and of the improvements thereon were both raised sufficiently to permit adjudication.
 

 In the present suit, the issues relating to the bare land and to the improvements have been raised sufficiently. Although the assessment of the plaintiffs mill improvements arose from an appraisal made by the defendant under contract to the county assessor and the appraisal of the bare land was made directly by the assessor’s staff (belatedly), both appraisals were
 
 *[439]
 
 the assessor’s responsibility and would normally be deemed one transaction and the comb so holds, for purposes of this suit, that only one transaction actually was involved, but the transaction was only partially completed by the county during each of the years before the court.
 

 The court is not unmindful of the importance and necessity of statutes of limitation.
 
 (See Rothensies, supra.)
 
 It is also aware of the policy which makes imperative the rule of exhaustion by the taxpayer of administrative remedies.
 
 Rosboro Lbr. Co. v. Heine et al.,
 
 8 OTR 221 (1979),
 
 aff’d
 
 289 Or 899, 618 P2d 960 (1980). It recognizes that, in the present suit, the taxpayer’s failure to discover at an earlier date what it now protests (the overpayment of taxes on its real property improvements) is suspect. However, no inferences on that point can be developed in the present stage of the pleadings. While the plaintiff may be guilty of laches, the county assessor is equally at fault in failing, during the same years, to assess the bare land.
 

 The importance to the state of the regular collection of taxes is particularly emphasized by the mandate of the omitted property statute, ORS 311.207, ultimately used by the county assessor against the plaintiff. An equally important policy requires that a taxpayer be required to pay only those taxes legally levied and the penalties and interest required by statute. Double taxation by any means is anathema. (This policy is implicit in ORS 311.806.) The taxpayer should be preferred over government where both are negligent.
 
 Lyman v. U. S., 22 F
 
 Supp 14 (D Mass 1938), 20 AFTR 806, 38-1 USTC ¶ 9079.
 

 The defendant’s motion for dismissal, on both counts, must be denied. It is, therefore,
 

 ORDERED that defendant’s motion to dismiss the plaintiff’s first amended complaint should be and hereby is denied. Defendant is allowed 10 days in which to plead further, pursuant to ORCP 15 B.
 

 [1]
 

 The applicable Rules of Procedure of the Oregon Tax Court, which adopted many of the sections of the new Oregon Rules of Civil Procedure (ORCP), including Rule 21, were promulgated and published by the court as of July 1, 1980.
 

 [2]
 

 See
 
 Comment, 1980 Oregon Rules of Civil Procedure (Oregon Law Institute, Dec. 1979), 65.
 

 [3]
 

 Counsel, in pleadings and arguments, have conceded a number of facts which were not necessary to or used by the court in evaluating the motion to dismiss, but help to understand how the suit arose. Counsel have
 
 *[431]
 
 conceded that the land leased from the Port of Cascade Locks by the plaintiff was taxable to the plaintiff (ORS 307.030, 307.090(1), 307.110(1) and 307.120). However, in the several annual tax statements delivered to plaintiff by the tax collector, the assessed value of the buildings, structures and improvements on the real property were shown but the assessed value of the land itself was omitted. (The court notes that ORS 308,215(l)(e) and (g) require that, for the purposes of the
 
 assessment roll,
 
 the county assessor
 
 must
 
 specify the assessed value of the land, excluding all buildings, structures and improvements and timber and, in two other columns in the assessment roll, the assessor must specify the assessed value (a) of all timber and (b) the assessed value of all buildings, structures and improvements. However, another pertinent statute, ORS 311.250, does not require such specific data to be set out
 
 in the tax statement
 
 delivered to the taxpayer by the tax collector pursuant to ORS 311.250. ORS 311.250 merely requires that, in the case of real property, the tax statement must contain "a description which meets the requirements of subsection (1) of ORS 308.240; * * Subsection (3) of the same section provides: "The failure of a taxpayer to receive the statement described in subsection (2) of this section shall not invalidate any assessment, levy, tax, or proceeding to collect tax.” It appears, in practice, tax statements substantially duplicate the assessment roll data. The thrust of these statutes would appear to vitiate an appeal based on equitable estoppel and plaintiff has not pleaded it.)
 

 The parties further conceded that the real property improvements, the value of which was stated upon the several tax statements under the category of improvements, was annually determined by the Department of Revenue on behalf of the Hood River County Assessor pursuant to a contract under ORS 306.126; further, the assessed valuation placed upon the interest in the omitted property (land only) is not contested. It is also admitted that the plaintiff relied upon its sale of the subject property, including the leased interest, to a third party in 1977 for $2,250,000 for the asserted total value of the property, to prove its overpayment of taxes, but the overpayment, if any, is not a liquidated amount.
 

 [4]
 

 The prayer also asks for an award of attorney fees. No statutory provision for attorney fees is to be found in the property tax law.
 

 [5]
 

 Mr. Justice Roberts, in his opinion, constantly referred to the income or estate tax liability as a "debt” of the taxpayer. While it makes no difference in this instance, it is often held (and it is very important in some cases) that the tax is not ordinarily regarded as a debt; e.g., the government’s claim against a bankrupt’s estate for taxes is not to be classed with a creditor’s claim for the payment of ordinary debt, for taxes are not debts, but imposts levied for the support of the government; taxes are not founded on contract but stand on a different plane because they are charges imposed on the taxpayers
 
 in invitum
 
 by the exercise of the sovereign power of the state. A tax, not being a debt in the legal sense, does not automatically bear interest, if delinquent, unless the legislature so provides.
 
 See
 
 numerous citations in 41
 
 Words and Phrases
 
 (perm ed), Tax; Taxation (Debt). However, a government may explicitly declare a tax also to be a debt.
 
 See,
 
 for example, ORS 321.105 and 321.337.
 

 [6]
 

 Other informative cases relating to the subject of equitable recoupment are:
 
 Twitchco, Inc. v. U. S,
 
 348 F Supp 330 (ND Ala 1972), 30 AFTR2d 72-5431, 72-2 USTC ¶ 9650;
 
 Smith v. U. S.,
 
 373 F2d 419 (4th Cir 1966), 19 AFTR2d 433;
 
 Dysart v. U. S.,
 
 340 F2d 624 (Ct Cl 1965), 15 AFTR2d 205,65-1 USTC ¶ 9188;
 
 Missouri Public Service Co. v. U. S.,
 
 245 F Supp 954 (DC, Mo 1965), 6 AFTR 5774, 65-2 USTC ¶ 9648;
 
 May Department Stores Co. v.
 
 
 *[438]
 

 City of Pittsburgh,
 
 31 PaC 398, 376 Atl2d 309 (1977);
 
 Estate of Kasishke v. Oklahoma Tax Commission
 
 (Okl), 541 P2d 848 (1975);
 
 American Motors Corp. v. Wisconsin Dept. of Revenue, 64
 
 Wis2d 337, 219 NW2d 300 (1974).
 
 See also
 
 10
 
 Mertens Law of Federal Income Taxation
 
 § 6010 (Zimet ed 1964).